539 So.2d 526 (1989)
ORANGE COUNTY, Florida, Appellant,
v.
Johnnie P. GIPSON, Etc., et al., Appellees.
No. 88-1112.
District Court of Appeal of Florida, Fifth District.
March 2, 1989.
*527 Steven F. Lengauer of Eubanks, Hilyard, Rumbley, Meier and Lengauer, P.A., Orlando, for appellant.
Joe B. Weeks and James O. Driscoll, Orlando, for appellees.
ORFINGER, Judge.
Appellant Orange County appeals from a final judgment in favor of appellees the City of Orlando and Cigna Insurance Company on their claim for contribution. The County raises three points, first that appellees were erroneously permitted to proceed to judgment on their claim despite having failed to provide timely notice of said claim to the State Department of Insurance as per section 768.28(6)(a), Florida Statutes (1987), second, that the trial court erred in denying its motion for directed verdict on the theory of attractive nuisance and third, that the trial court erred in calculating the County's liability.
The essential facts underlying this action are tragic indeed. In 1979, two children, ages 7 and 12, drowned in a drainage canal owned by the County. Spanning the canal were sewer pipes owned by the City. The younger child was attempting to cross these pipes when he fell into what was described at trial as the filthy, polluted, weed-choked canal. According to one eyewitness, the child went under and when he came up was entangled in weeds. The older child jumped in, attempting to rescue his friend but both children were lost.
The decedents' estates sued the City, its insurer and the County for wrongful death alleging negligence and further alleged that they provided written notice of their claims to the City, County and State Department of Insurance in compliance with *528 section 768.28(6), Florida Statutes. Prior to trial, the City and its insurer settled with the plaintiffs, with each estate receiving $100,000. Plaintiffs released the City and the County but the County did not contribute to the settlement. The City and its insurer then filed a crossclaim for contribution against the County and the Orange County School Board. The School Board settled the claim against it for $8,000 prior to trial. The City did not allege that it had presented said contribution claim in writing to the State Department of Insurance within six months of the settlement. The record reveals written notice was sent by the City to the Department but approximately one year after the settlement. The case ultimately went to trial and the jury found negligence on the part of the County, assessing 25% liability to the County and 75% to the City. The jury also found that the City's total payment of $200,000 was not an unreasonable settlement. The trial court entered final judgment against the County for $42,000 ($50,000 less a setoff for the $8,000 received by the City from the School Board).
The County first argues that under the language of section 768.28(6), appellees' action was barred as a result of the alleged notice deficiency and that the trial court erred in not granting its motions to dismiss, for summary judgment, and for directed verdict on this point. We disagree.
Section 768.28(6), Florida Statutes (1987) provides:
(a) An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, presents such claim in writing to the Department of Insurance, within 3 years after such claim accrues and the Department of Insurance or the appropriate agency denies the claim in writing; except that, if such claim is for contribution pursuant to s. 768.31, it shall be so presented within 6 months after the judgment against the tort-feasor seeking contribution has become final by lapse of time for appeal or after appellate review or, if there is no such judgment, within 6 months after the tortfeasor seeking contribution has either discharged the common liability by payment or agreed, while the action is pending against him, to discharge the common liability. The failure of the Department of Insurance or the appropriate agency to make final disposition of a claim within 6 months after it is filed shall be deemed a final denial of the claim for purposes of this section. The provisions of this subsection do not apply to such claims as may be asserted by counterclaim pursuant to s. 768.14.
(b) For purposes of this section, the requirements of notice to the agency and denial of the claim are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues.
(Emphasis added).
The County points out that courts have strictly construed these provisions and routinely held that a plaintiff's failure to comply with the notice requirements of subsection (6)(a) bars an action against the governmental entity. See, e.g., Menendez v. North Broward Hospital District, 537 So.2d 89 (Fla. 1988); Levine v. Dade County School Board, 442 So.2d 210 (Fla. 1983); Ryan v. Heinrich, 501 So.2d 185 (Fla. 2d DCA 1987). The County also correctly notes that in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979) the supreme court applied the subsection to third party complaints for contribution and held that compliance with the required notice to the Department of Insurance was a condition precedent that must be alleged in the complaint.
The present case however is distinguishable from these decisions. Here, the fact that proper and timely notice of the tort claims was given by the plaintiff estates to the Department and was properly alleged in their complaints was not in dispute. In the Menendez and Levine line of cases, the plaintiffs failed to give proper notice to the Department prior to institution of the tort actions.
*529 Further, unlike Commercial Carrier, here, the County was a party defendant to the tort action as to whom notice was required and given. In Commercial Carrier no governmental agency was a defendant to the original action, and no notice was required to be given until the County was brought in as a third party defendant. Sub judice, the sovereign immunity barrier was pierced in the underlying tort litigation and notice of the tort claims against the County was provided to the Department of Insurance at that time. We reject the County's argument that written notice to the Department was required for a second time on the crossclaim for contribution which arose out of such tort claims, despite the fact that the County was a defendant from the inception of the litigation and notice of claim was given by the plaintiffs.
It is an elementary principle of statutory construction that statutes will not be interpreted so as to yield an absurd result. Williams v. State, 492 So.2d 1051 (Fla. 1986). The action here was "instituted" by plaintiff estates against the City and County and the contribution crossclaim was simply part and parcel of that same action. We believe this latter conclusion is buttressed by the recent amendment to our rules of civil procedure which clarifies that service of a crossclaim on a party who has appeared in the action shall be made as with any other pleading and need not be made by summons as is the rule with initial pleadings. See In Re: Amendments to Florida Rules of Civil Procedure, 536 So.2d 974, 976 (Fla. 1988).
In sum, we conclude that section 768.28(6)(a) does not require that the City provide notice of its contribution crossclaim to the State Department of Insurance when the County was already a party defendant, and notice of the claim against the County was given to the Department of Insurance by the original plaintiff. We construe that portion of section 768.28(6) which requires notice to be given or a contribution claim to apply only in cases where the claim for contribution is an independent action of a third party claim against a government agency not a party to the original tort action. However, we elect to certify the following question to the supreme court as a question of great public importance pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v):
Is a crossclaimant for contribution against a governmental entity required by s. 768.28(6)(a), Fla. Stat., to provide notice of its crossclaim to the State Department of Insurance where the underlying tort claimants have provided timely and proper notice of the tort claims to the Department and both the governmental entity and the crossclaimant were defendants in the litigation at the time such notice was provided?
As to the County's second point, the parties agree that the County's liability was predicated on the attractive nuisance theory. We have no hesitation in affirming the jury's conclusion that the filthy, polluted, weed-choked, garbage plagued drainage canal located near a school and recreation area which the County knew or should have known children crossed by way of the pipes constituted an attractive nuisance.
The final point concerns the amount of the County's liability. The County argued by way of motion to limit liability that under the statute in effect at the time of the accident, sovereign immunity was waived only to the extent of $50,000 per claim and $100,000 per incident. § 768.28(5), Fla. Stat. (1977).[1] It claims that accordingly the City was only legally obligated to pay $50,000 per claim and $100,000 as an absolute maximum and that any *530 payment by the City in excess of $100,000 was excessive as a matter of law. The County asserts that under the contribution statute it cannot be required to pay more than its pro rata share of the entire liability and that having been found 25% at fault, its pro rata share of liability here is 25% of $100,000 or a total of $25,000 (less the $8,000 set off for monies paid by the Orange County School Board for a total of $17,000).[2]
The date of the incident controls the determination of which version of the sovereign immunity statute applies. City of North Bay Village v. Braelow, 469 So.2d 869 (Fla. 3d DCA 1985), reversed on other grounds, 498 So.2d 417 (Fla. 1986). Section 768.28(5) imposes a cumulative per incident limitation on total recovery regardless of whether the source of payment is a single governmental entity or multiple governmental entities. Gerard v. Department of Transportation, 472 So.2d 1170 (Fla. 1985). While this was a contribution action, the County was only liable for its pro rata share of the common liability which here, as a matter of law, could not exceed $100,000 under the applicable waiver of sovereign immunity statute. The County's liability, given the jury's verdict was $25,000, less credit for $6,000 (75% of the $8,000) paid by the School Board for a total of $19,000. We remand for entry of a corrected judgment.
AFFIRMED IN PART, REVERSED IN PART; REMANDED; QUESTION CERTIFIED.
SHARP, C.J., and DANIEL, J., concur.
NOTES
[1] This subsection provided:

The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period prior to judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000 or any claim or judgment, or portions thereof, which when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $100,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $50,000 or $100,000, as the case may be, and that portion of the judgment that exceeds these amounts and may be settled and paid pursuant to this act up to $50,000 or $100,000, as the case may be, and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. The limitations of liability set forth in this subsection shall apply to the state and its agencies and subdivisions whether or not the state or its agencies or subdivisions possessed sovereign immunity prior to July 1, 1974.
(Emphasis added).
[2] The City does not assert that it had available insurance over and above the $100,000 allegedly applicable to this incident.